ROBERTSON, Justice:
This is a workmen’s compensation case. Appellant, John Phillips, filed his claim for disability and medical benefits for injuries resulting from an automobile accident on May 31, 1966, while he was working for J. L. Skinner, Contractor. The attorney-referee found that he was temporarily totally disabled and was entitled to receive compensation and medical • expenses until the commission could determine when he reached maximum medical recovery.
The full commission found that appellant did not sustain an accidental injury within the meaning of the Workmen’s Compensation Act, and was of the opinion that:
“[A]ny disability he now suffers or that he has suffered subsequent to his alleged accident is the results [sic] of some cause unrelated to this employment.”
The commission denied and dismissed the claim. The Circuit Court of Rankin Coun *168 ty affirmed the order of the commission. Hence this appeal.
There is no dispute that the accident of May 31, 1966, occurred while Phillips was acting within the scope of his employment. He was instructed to drive a pickup truck and follow a tractor which was being driven by his foreman on U. S. Highway 49 to another job site. He was driving at about 20 miles per hour on Highway 49 close to Plain, Mississippi, when his truck was struck from the rear by an automobile and knocked forward about 30 feet. Phillips drove the truck off the highway, commented to his foreman that the truck was not damaged, sat down on the side of the road and fainted. An ambulance was called, and he was taken to the University Hospital, where he remained overnight. The following day, Wednesday, he was given a drug prescription and discharged from the hospital. He returned to work and spent the remainder of the day shov-elling dirt into an excavation of some large underground gas tanks. That afternoon about 4 p. m. he rode with his foreman to his home in Meridian. He worked the rest of the week in Meridian for his employer.
While Phillips testified that he had seen two other doctors during the interim, these doctors did not testify, and he went to the Matty Hersee Hospital in Meridian on October 10, 1966, as a charity patient. There he complained to Dr. W. R. Hollo-day of pain in the lumbar spinal area and the right leg.
Dr. Holloday testified that as of December 7, 1966, the last time he saw Phillips, his disability was total. Holloday recommended a myelogram by a neurosurgeon.
Phillips was sent to Dr. Richard W. Naef, a well qualified neurologist and psychiatrist, who examined him for the first time on January 20, 1967. Phillips had previously had disc surgery in 1964 and had accepted a lump sum compensation settlement of $5,300 for a permanent thirty percent loss of use of the right leg and twenty percent loss of use of the left leg.
Dr. Naef testified at the hearing before the attorney-referee:
Q. Does he have now any disability that exceeds the 30% loss of use of the right leg?
A. No, I don’t think so. I think he has a temporary problem now from which he will recover shortly, depending on, all the pressures and strains and aggravations that he might have in the near future. I think that he’ll get well from this accident as he did before.
Q. Do you think this is an anxiety situation ?
A. I don’t think it’s an anxiety neurosis. I think he’s worried about his back and fearful that he’ll have to have surgery again.
******
Q. In your opinion, physically, could he do — at the time you examined him, the type work he was engaged in prior to May 31st, 1966?
A. Not that day that I saw him because he was having painful muscle spasm but this is a temporary problem that is less than — as you asked the question — 30%' disability, and it is not a permanent disability and it can be expected to clear up if we could just get him to understand what’s wrong, and relax and quit being so anxious and holding his back so stiff. The point I’m trying to make is: if he could cooperate with treatment with the clear understanding, as I see it, that he does not have a ruptured disc and is not going to have to have surgery, he could get well; if he doesn’t cooperate with treatment but if the case is settled and there’s nothing more to be gained, had, or whatever from the *169 whole thing, he will still get well in a matter of a short time because all he has is muscle spasm.
Q. Are you saying his incapacity now is an imaginary incapacity?
A. No, the muscle spasms are continuing over a period of these several months because he is so concerned and he’s so emotionally upset; it’s not imaginary.
Q. Is that a result of the 1963 injury?
A. It’s an outgrowth in part of the I960 injury in that the symptoms came on after the injury, see, in May 1966 but the development of the symptoms now, since the injury in May 1966, is partly due to his previous experience in that he makes a relationship, he draws a relationship in his mind, you see?
* * * * * *
Q. So you don’t think it was physical trauma that had anything to do with what he showed you on the—
A. Of course, when he was struck from the rear and jarred forward, he would have been thrown backward against the seat and then he would have had a rebound forward and he got out of the truck, he could have have had a simple muscular strain. I think he could reasonably have had a muscular straining of his back.
tfc í{í * * #
A. I would say that on the day I saw him he was suffering with muscle spasms and couldn’t work that day but it was a temporary situation and he should recover. Now on that day I say that he had a 30% disability of his back; then I’d say at least 20% of that is due to the previous disorder of his spine and the influence of the previous injury on his mind, on his emotional state.
Q. And 10%—
A. And 10% of what he had that day would be a reaction to the May 31 accident, 1966, but not due to physical injury. I don’t think he injured his back that day.
ifi ^ jfi Jfc
A. I’d say that 10% of it, is related to the accident. Now, you see you’ve got to understand this as I see what’s wrong with him. He has a functional problem. You can call it psychophysiologic muscle spasm. It’s not a broken muscle or a ripped and torn muscle. It’s not a broken bone or a ruptured disc or a contused nerve. See? He’s got a crick in his back and it goes on and on because he’s excited and can’t relax, he’s zvorried, he remembers the previous experience and he’s afraid he’ll be out of a job, he’s afraid he’ll have to be operated on. These are mental factors causing the muscle spasm. Now, in that sense two-thirds of it is an outgrowth of the previous experiences >of this man and one-third of it is related t'o the present injury.
[[Image here]]
Q. In your opinion, if he overcame his mental attitude about it, would the muscle spasm clear up?
A. Yes, if he would relax his concern and realize that he has nothing to fear and is going to get well, he’ll get well, which he’s going to do eventually, as soon as this case is settled, in a matter of a fezv weeks or a fezv months at the most. (Emphasis added). '
The medical evidence is undisputed that he is temporarily totally disabled; both Dr. Holloday and Dr. Naef testified to this. It is also undisputed that the accident of May 31, 1966, however slight, triggered his present disability.
*170 The attorney-referee was correct when he found that appellant was temporarily totally disabled and should be paid compensation for temporary total disability and medical expenses as provided in the Compensation Act.
The judgment of the circuit court and the order of the Workmen’s Compensation Commission will be reversed, and this cause remanded to the commission to deter mine when the appellant reached maximum medical recovery or when his condition became static. The commission will then be in position to determine whether he has any permanent disability resulting from the accident of May 31, 1966, or whether it is all due to his preexisting condition for which he has already been, compensated.
Reversed and remanded.
GILLESPIE, P. J., and JONES, BRADY, and INZER, JJ., concur.